OPINION OF THE COURT
Robert M. Stolz, J.
The defendant was convicted of assault in the third degree (Penal Law § 120.00 [1]) following a jury trial. He now moves *800 to set aside that verdict pursuant to Criminal Procedure Law § 330.30 (1), arguing that the admission into evidence of testimony that he had been smiling following his arrest and the prosecutor’s reference to that testimony in summation were errors which would require reversal as a matter of law if raised upon appeal. The motion is denied. The court finds: (1) the evidence was properly received as probative of the defendant’s state of mind, which was particularly relevant to his proffered defense of justification; (2) its receipt and the prosecutor’s argument violated neither state evidentiary rules nor any constitutional proscription; (3) defendant’s claims of error were not preserved; and (4) even if error were committed, and otherwise reviewable, it was harmless beyond a reasonable doubt.
The evidence established that the defendant, with two companions, was seated at a diner in the early morning hours of September 7, 2002. Prior to that they had been drinking in a bar in Greenwich Village. At some point, David Wells, a well-known Yankee pitcher, arrived with his personal trainer and sat in the booth adjacent to the defendant and his friends. Upon recognizing Wells, the defendant initiated what he apparently thought was a jocular verbal exchange. More particularly, upon hearing Wells order an egg-white omelette, the defendant commented, “Why don’t you order a cheeseburger,' you fat fuck?” Both the defendant and his companions apparently regarded this and further insults, directed at both Wells and his mother, as a source of amusement. At some point Wells approached the defendant and his companions to ask them to desist, whereupon defendant struck him, knocking out two teeth and causing him to hit his head on a table as he fell to the floor.
Following this altercation, Wells and his companion left the restaurant to call the police. From the street they could see the defendant laughing with his companions, exchanging congratulatory “high five” handshakes with them and making obscene gestures toward Wells and his companion. Further testimony established that the defendant continued smiling while being arrested and removed from the diner and that this demeanor continued throughout the processing of his arrest.
From the outset, the defendant interposed a defense of justification. Although he did not testify in his own behalf, both of his companions did. The thrust of their testimony was that defendant was not the initial aggressor, but rather acted in self-defense to repel an incipient or actual assault by Wells — a 240-pound athlete, whom the defense contended was *801 drunk at the time. It was the People’s position that the defendant provoked the encounter and assaulted Wells.
The defendant’s motion to set aside the verdict is without merit. The demeanor testimony was properly admitted at trial. As a matter of state evidentiary law, a postarrest smile is generally inadmissible to establish consciousness of guilt because it can convey many different states of mind and is therefore often ambiguous and minimally probative. (People v Basora, 75 NY2d 992 [1990]; People v Harris, 98 NY2d 452 [2002].) The rule articulated in Basora, however, is inapplicable here.
Thus, Basora involved both the testimony of the defendant’s smile at the time of his arrest following a drug sale, which he had allegedly arranged to take place through his agent, and the prosecutor’s summation comment about the defendant’s in-court smile during trial. The testimony concerning that defendant’s smiling at the time of his arrest was offered as evidence of his consciousness of guilt in that he smugly believed he had insulated himself from liability for the crime by his use of an intermediary. The Basora Court found that the smile, which was substantively unrelated to the actual crime, also could have been evidence of other states of mind, such as bewilderment or nervousness. As such, the evidence in that case was ambiguous and not otherwise probative of any issue in the case and therefore should not have been admitted, although harmless.
Similarly, Harris, unlike this case, concerned testimony about and a prosecutor’s references to the defendant having smiled during the trial testimony of two witnesses. There the Court likewise found, under the facts of that case, that such evidence, offered as consciousness of guilt, was of “questionable and limited probative value” (People v Harris, supra, 98 NY2d at 492) and should have been excluded under state evidentiary rules. While cautioning against its admission, the Court did not preclude the reception of evidence of a smile in all cases. The Court also found that the constitutional claims concerning the prosecutor’s comments on the defendant’s courtroom demeanor — an issue not present in this case — had not been preserved and were, in any event, harmless.
In this case, the evidence of defendant’s demeanor was qualitatively different from that in both Basora and Harris. Here the evidence was unambiguous and highly probative of the defendant’s state of mind, a matter central to his asserted defense of justification, which the People had to disprove beyond a reasonable doubt. Rather than being merely testimony *802 of an after-the-fact smile, as in Basora, or a smile at trial, as in Harris, the testimony admitted in this case concerned the defendant’s continuous conduct before and during the incident and its uninterrupted continuation following his arrest. Thus, defendant’s laughter and smiling was not simply indirect or speculative proof of “consciousness of guilt.” Rather it was exactly what it appeared to be — direct evidence that he and his companions regarded the events of that day as a source of extreme amusement and reason for celebration. Defendant’s broad comic demeanor was hardly of the same ambiguous character as the after-the-fact smile in Basora or the courtroom smirk in Harris. To the contrary, it clearly evinced his contemporaneous intent. This was evidence the jury was entitled to hear.
Thus, from the beginning, the defense argued that the defendant was the frightened victim of an impending assault by Wells. Having interposed this defense, the defendant made his state of mind a “crucial” issue in the case. (See People v Miller, 39 NY2d 543 [1976]; People v Long, 104 AD2d 902 [2d Dept 1984].) Accordingly, the People were entitled to prove that defendant’s demeanor was inconsistent with that state of mind. Certainly the jury was entitled to consider that a person who was acting in self-defense would not be sharing bemused smiles, laughter and “high fives” with his companions before and during the incident. Nor would someone who had just been attacked by a 240-pound intoxicated athlete, as defendant claims, continue to regard that event as a source of amusement after he was arrested. In sum, since the demeanor evidence offered by the People in this case was part of the defendant’s conduct during the incident, was integral to the incident itself, was unambiguous and was probative of the defendant’s state of mind, its receipt into evidence was consistent with New York law.
Finally, even if the receipt of this evidence were error, it was clearly harmless beyond a reasonable doubt in light of the remaining strong evidence of guilt in this case. In fact, both the Harris Court and the Besora Court found that the wrongful introduction of such demeanor testimony was harmless beyond a reasonable doubt even in the circumstances of those cases, which, as noted, were considerably more compelling than those presented here. Indeed, the only other appellate court which has considered the Basora issue of demeanor testimony also found its introduction to have been harmless error. (See People v Baily, 216 AD2d 1 [1st Dept 1995].)
*803 The defendant also attempts to raise a constitutional claim that the testimony and the prosecutor’s summation concerning his postarrest smiling somehow violated his Fifth Amendment rights under Doyle v Ohio (426 US 610 [1976]). The defendant raises this claim for the first time on this motion. The court finds that no such claim was articulated at trial. To preserve this claim, the defendant seeks to amend the trial transcript, pursuant to CPLR 5525 (c), to include the words “Doyle error” in his objection at page 32, line 14 of the prosecutor’s summation. The application is denied. The record fails to establish such an objection. The court has no recollection of such an objection being made. The court reporter’s notes do not contain any such objection. Here, as in the Harris case, the defendant’s objections “fell far short of apprising the court of the constitutional claim[ ] he now raises.” (People v Harris, supra, 98 NY2d at 492.) Since this constitutional claim is un-preserved, any alleged error would not require reversal as a matter of law upon appeal.
Moreover, even had the constitutional claim under Doyle been preserved or were otherwise reviewable, it would be without merit. Doyle simply stands for the proposition that a testifying defendant may not be impeached by his silence at the time of his arrest after he has received Miranda warnings, a circumstance not presented here.* Defendant seems to suggest that a claim of “Doyle error” would have raised the novel argument that the prosecutor’s comment about defendant’s postarrest demeanor was the same thing as cross-examining him about his postarrest, post -Miranda silence. Both things, defendant argues, violate the Fifth Amendment. In support of this, he cites the Court of Appeals opinion in People v Basora (supra), that testimony of a single postarrest smile should not have been received in that case because it “allowed the People * * * to thwart the defendant’s Fifth Amendment right by attributing communicative value to his act of smiling.” (People v Basora, supra, 75 NY2d at 993.) Defendant reads Basora far too broadly. Taken to its logical extension, or for that matter as applied in this case, defendant’s argument would preclude any evidence of or argument about a defendant’s postarrest behavior as somehow “communicative” and barred by the Fifth Amendment — no matter how clear and probative. The absurdity of such a result is readily apparent.
*804 Indeed, it is far from clear that Basora rests on Fifth Amendment constitutional grounds, as opposed to New York State evidentiary rules. Thus, Basora cites, inter alia, People v Conyers (52 NY2d 454 [1981] [Conyers II\). In that case, which followed upon the Supreme Court’s ruling in Jenkins v Anderson (447 US 231 [1980]), the Court of Appeals precluded the use of a defendant’s pretrial silence for impeachment purposes under New York State evidentiary law. The Conyers II Court explicitly stated that its decision did not rest upon either state or federal constitutional considerations. Subsequently, in People v De George (73 NY2d 614 [1989]), the Court of Appeals reiterated that such use of a defendant’s pretrial silence is governed by “our common-law rules of evidence.” (People v De George, supra, 73 NY2d at 618.) Similarly, the subsequent history of Basora in federal court makes it clear that no Fifth Amendment issue was presented by the defendant’s postarrest smile because it was not “compelled” within the meaning of the Fifth Amendment. (See Basora v Mitchell, 803 F Supp 897, 898 [SD NY 1992] [“The Fifth Amendment privilege protects one from being ‘compelled’ to be a witness against one’s self in a criminal case. With respect to the smile at the time of arrest, it is hard to discern how petitioner could have been ‘compelled’ to make that communication”].) This is, of course, consistent with the long-standing constitutional rule that the Fifth Amendment only protects against testimony which is the product of compulsion. (Fisher v United States, 425 US 391 [1976]; Doe v United States, 487 US 201 [1988]; People v Latham, 90 NY2d 795 [1997].) Clearly, in this case no compulsion of any kind precipitated defendant’s smiles either before or after he was arrested.
In any event, this objection was not preserved, and even were it reviewable, it was harmless beyond a reasonable doubt. (See People v Harris, supra, 98 NY2d at 492; People v Basora, supra, 75 NY2d at 994; People v Baily, 216 AD2d 1, 2 [1st Dept 1995].)
In sum, under the facts of this case, the testimony regarding the defendant’s demeanor was properly admitted under state evidentiary rules. Even if it were error to have admitted this testimony, such error was harmless beyond a reasonable doubt. Furthermore, any constitutional claim is unpreserved, harmless and, in any event, without merit.
The defendant’s motion to set aside the verdict pursuant to Criminal Procedure Law § 330.30 is hereby denied.

 For this additional reason, even if made, defense counsel’s somewhat cryptic reference to “Doyle error” would not have apprised the court of the claim he now makes, and therefore would not be preserved.