*733 OPINION OF THE COURT
Robert M. Stolz, J.
The defendant has moved to vacate his conviction pursuant to CPL 440.10 (1) (g) upon the ground of newly discovered evidence.[1] After a jury trial, he was convicted of assault in the third degree (Penal Law § 120.00). The complainant was New York Yankee pitcher David Wells. Subsequent to the trial, a book was published in which Mr. Wells relates certain details of the incident, which defendant claims are at variance with his trial testimony. Defendant argues that this variance rises to the level of newly discovered evidence within the meaning of the statute and that he is entitled to a new trial.
The power to vacate a judgment pursuant to CPL article 440 upon the ground of newly discovered evidence, as well as the determination as to whether to hold a hearing on the motion, is within the discretion of the court to which the motion is addressed. (People v Baxley, 84 NY2d 208 [1994]; People v Robinson, 211 AD2d 733 [2d Dept 1995].)
CPL 440.10 (1) (g) provides that:
“At any time after the entry of a judgment, the court in which it was entered may, upon motion of the defendant, vacate such judgment upon the ground that * * * [n]ew evidence has been discovered since the entry of a judgment based upon a verdict of guilty after trial, which could not have been produced by the defendant at the trial even with due diligence on his part and which is of such character as to create a probability that had such evidence been received at the trial the verdict would have been more favorable to the defendant; provided that a motion based upon such ground must be made with due diligence after the discovery of such alleged new evidence.”
In order to constitute newly discovered evidence warranting a new trial, the proffered evidence must do more than merely impeach or contradict the former evidence. (People v Baxley, 194 AD2d 681, 682 [2d Dept 1993], citing People v Salemi, 309 NY 208 [1955].) When the new evidence only tends to impeach or discredit prior testimony, it is within the court’s discretion *734 to deny the motion. (People v Walker, 116 AD2d 948 [3d Dept 1986] ,)[2]
A comparison of the version of the incident recounted in the book with the trial testimony reveals an inconsistency in some of the details but also confirms a basic consistency in the People’s case. The gravamen of the case — an unprovoked assault perpetrated upon Mr. Wells — remains consistent throughout both versions. At trial Mr. Wells testified that he was “sucker-punched” in the side of the face and hit his head on a table as he fell to the floor. Shortly afterward the defendant brandished a butter knife. In the book, Mr. Wells relates that the defendant grabbed a butter knife and pounded it into his face and sucker punched him twice in the head. In both versions, Mr. Wells says that he was surprised by the blows and did not see them coming. The other purported inconsistencies about the incident involve details of how it was established that the complainant was in fact Mr. Wells and of where the parties were seated during their conversation. What is not inconsistent is the content of that conversation and the fact that the verbal exchange led to a physical confrontation. The other two statements highlighted by defendant — one concerning a curfew and the other concerning a public figure’s right to strike annoying people — are, at best, marginally inconsistent.
While it is true that the People’s case centered on the testimony of Mr. Wells, there was also testimony from other witnesses who were present at the time of the incident, including Scott Yeckinevich, Mr. Wells’ trainer and dinner companion, and two of the defendant’s friends, Joseph D’Angelo, who is also the defendant’s cousin, and Anthony Spinelli. The defendant did not testify at- trial. This was not, therefore, a case based solely on an assessment of the credibility of the complainant versus the credibility of the defendant — a situation present in two of the cases cited by the defendant in which the trial courts exercised their discretion and granted the motion. (See *735 People v Marzed, 161 Misc 2d 309 [1993]; People v Ramos, 132 Misc 2d 609 [1985].)[3]
The court is unpersuaded by defendant’s argument that the “newly discovered evidence” is something other than impeachment evidence. The fact that contradictory statements deal with the subject matter of an offense does not remove them from the realm of impeachment material and somehow transform them into something else. Indeed, inconsistent statements of a witness have no independent testimonial value and may not be introduced as affirmative evidence of the facts stated. (See e.g. People v Freeman, 9 NY2d 600 [1961]; see also Prince, Richardson on Evidence § 6-412, at 409 [Farrell 11th ed].) In sum, the assertions in the book are, at most, impeachment material which, in light of the amount of material which was available to defendant at trial and the skillful cross-examination conducted by defense counsel, would have been unlikely to have resulted in a more favorable verdict. In any event, the unsworn inconsistent statements which are the basis for this motion do not qualify as newly discovered evidence under the Salemi standards. Thus, in People v Casillas (289 AD2d 1063 [4th Dept 2001]), the Court affirmed the denial of a similar postverdict motion based on statements in a civil proceeding that were purportedly inconsistent with the victim’s trial testimony and held such statements to be impeaching evidence, which did not justify setting aside the verdict. Similarly, the statements in this case — which are unsworn, out of court statements — do not justify the setting aside of the jury’s verdict nor do they require a hearing.[4]
*736 The defendant’s CPL 440.10 motion to vacate judgment hereby denied.

. This is defendant’s second posttrial motion. His earlier motion pursuant to CPL 330.30 was denied by this court’s opinion dated January 23, 2003 (194 Misc 2d 799).

. Defendant makes no claim of any Brady or Rosario due process violation — a consideration present in most of the cases cited by him, in which postconviction motions based upon newly discovered evidence have been granted. (See Napue v Illinois, 360 US 264 [1959]; People v Cwikla, 46 NY2d 434 [1979]; People v Wallert, 98 AD2d 47 [1st Dept 1983]; People v Maynard, 80 Misc 2d 279 [1974].) Other cases in which such motions have been granted involve matters such as newly discovered DNA forensic evidence (People v Wise, 194 Misc 2d 481 [2002]) or evidence of psychiatric history which goes to the witness’ capacity to perceive and recall events (People v Rensing, 14 NY2d 210 [1964]).

. Marzed and Ramos also dealt with subsequently discovered criminal conduct of the People’s crucial witnesses, a factor not present in this case. Additionally, while not discussed in the published opinion, Marzed presented a Giglio violation (see Giglio v United States, 405 US 150 [1972]) in that, at the time of trial, the police officer witness was under investigation by the District Attorney’s Office for perjury in another, similar case, a fact that the People failed to disclose. This court notes that neither Marzed nor Ramos is a controlling appellate precedent.

. Indeed, even in cases of outright recantation (as opposed to mere inconsistency), where the main witness against the defendant disavows his or her trial testimony in a sworn statement, appellate courts have upheld the denial of motions for a new trial. In People v Lavrick (146 AD2d 648 [2d Dept 1989]), the Court affirmed the denial of defendant’s CPL article 440 motion based on an affidavit from the victim of a sexual assault in which he recanted his identification of the defendant as the perpetrator. In People v Turner (215 AD2d 703 [2d Dept 1995]), the Court affirmed the denial, without a hearing, of defendant’s CPL article 440 motion based on an affidavit from the People’s main witness in which he recanted his trial testimony.